(Wood County Court of Common Pleas.)

THE OHIO OIL COMPANY *v.* CAREY C. HARRIS.

---

*Oil Lease.*

1. The holder of a lease of lands granting to him the exclusive right to mine for oil or gas is required to drill on such lands, within a reasonable time, such number of wells and at such places as will reasonably protect said lands from drainage of oil or gas through wells on adjoining lands, and will reasonably exhaust the oil or gas in the lands leased, even though the lease be silent as to the number of the wells to be drilled.

2. If the lessee fails to drill such wells within a reasonable time, the lessor may by action procure a forfeiture of such exclusive right of the lessee to such an extent as to permit him, the lessor, to drill such additional wells as are necessary to reasonably guard against such drainage through wells on adjoining lands, and to properly exhaust the oil or gas in the lands leased.

3. Although there may be a number of wells on the adjoining lands, so located as to probably drain oil or gas from the lands in controversy, still, if there are on the lands in

controversy an equal number of wells so located as to probably draw oil or gas in like quantities from the adjoining lands, the lessor is not entitled to a forfeiture of the exclusive right of his lessee under the lease, for the reason that while he may lose some of his own oil or gas through wells on adjoining lands, he acquires his neghbor's oil or gas through the wells on his own land, and is thereby compensated.

(Decided November, 1894.)

*M. F. Elliott,* for plaintiff, cited as follows: Bouvier's Law Dic. Vol. 1 pp. 312, 313. *Coudert* v. *Sayre,* 46 N. J. Eq. 399. *Bradford Oil Co.* v. *Blair,* 113 Pa. St. 84; *McKnight et al.* v. *Krutz,* 51 Pa St. 232; *Stoddard* v. *Emery,* 128 Pa. St. 436: *Thompson* v. *Christie,* 138 Pa. St. 230; *Westmoreland Nat. Gas Co.* v. *De Witt,* 130 Pa. St. 235; *Lanman* v. *Young et al.,* 31 Pa. St. 306; *Paschall* v. *Passmore,* 15 Pa. St. 295. *Janes* v. *Emery Oil Co.,* 1st Pennypacker, 242; *Blair* v. *Peck et al.,* Id., 247. Cruise on Real Property, vol. 2, p. 2. Kent's Commentaries, vol. 4 p. 130. Wash. on Real Prop., vol. 1 p. 316. *West et al.* v. *Ins. Co.,* 27 Ohio St. Rep. 1.

*Troup & Dunn,* for plaintiff, cited as follows: 3 W. L. M. 148. *Pres. Ch.* v. *Pickett,* Wright, 57. *West et al.* v. *Ins. Co.,* 27 Ohio St. 1; *Hornbach* v. *Ry. Co.,* 20 Ohio St. 81, 88. *James* v. *Emery Oil Co.,* 1 Pennypacker, 242; *Blair* v. *Peck,* Id., 247. *Stoddard* v. *Emory,* d28 Pa. St. 436.

*F. P. Blackford,* of counsel for defendant, cited as follows: *Emerine* v. *Steel et al.,* 8 C. C. R. 387; *Hollister* v. *Vandergrift,* Wood County Circuit Court; *Gas Co.* v. *Whitaker,* Wood County Circuit Court; 4 C. C. R. 210; 6 C. C. R. 330; 8 C. C. R. 445. 28 Atl. Rep. 934. *Brown* v. *Vandergrift,* 80 Pa. St. 142; *Glascow* v. *Chartiers Oil Co.,* 152 Pa. St. 48; *McKnight* v. *N. W. Gas Co.,* 146 Pa. St. 185; *Stoddard* v. *Emery,* 128 Pa. St. 436; *Bradford Oil Co.* v. *Blair,* 113 Pa. St. 83; 93 Pa. St. 434; 130 Pa. St. 259; 146 Pa. St. 185. *Rorer Iron Co.* v. *Trout,* 83 Va 397, (5 Am. St. R. 285). *Edwards* v. *McClurg,* 39 Ohio St. 41; Wright, 202; 2 Ohio, 61; 16 Ohio, 421; 1 Ohio St. 244; 15 Ohio St. 559. Jones on Trade Contracts. Wood Landlord and Tenant, 448.

Johnson, J.

In this case the plaintiff sets forth that it has a lease for one hundred and sixty acres of land in Henry township, in Wood county, and that the lease by its terms provides it shall be in force for five years, or so long as oil and gas may be found in paying quantities.

That the plaintiff is the owner of the lease, and the defendant the owner of the land; and that under the terms of said lease the plaintiff pays to the defendant a royalty of one-sixth of all oil produced.

The plaintiff says further that it has drilled, equipped and is operating twelve wells on the land; that the defendant, Harris, is threatening to take possesion of the land and drill other wells. It asks that its title be quieted, and that defendant be enjoined from interfering with plaintiff's possession of said land.

To this petition the defendant, M. Harris, has filed an answer, alleging that under the terms of said lease and by virtue of the custom in such cases, the land was to be developed for oil, and a sufficient number of wells drilled on this one hundred and sixty acres to fully develop it; in other words, to produce and obtain from said land all the oil under the same; and also to protect the lands of said defendant from wells on adjoining lands in all cases where wells on adjoining lands were or should be drilled and operated so near the lands of defendant as to draw oil or gas from the same. The petition further alleges that upon completion of the first paying well at the time stipulated in the lease, without delay, other wells should be commenced and operated, so as to develop the land so leased, and particularly so where adjoining lands are being operated, and the plaintiff

has not drilled a sufficient number of wells to develop said land. Defendant further says that as to the wells on his land which plaintiff has drilled and operates he has no intention of interfering, but he says said wells do not fully develop his said land, but that there should be at least twelve additional wells put down, and he asks that as to the land on which there are no wells the prayer of the petition be refused, plaintiff's lease of the same be declared forfeited, and the defendant permitted to enter and drill wells thereon. To this answer the plaintiff has filed a reply denying the several allegations of the same. Testimony has been offered on both sides, and the case fully presented to the court in testimony and argument. A plat has been offered in evidence, a part of which is herewith presented.

```
40 °  40        °  80          80
 °                     °    °    °
                                 °
   °  °          °  °        °  │ °
   °                  °  °       │
   °    C. C.    C. C.       °   │ :
   °  ° Harris.  Harris.  °  │ ° │ : °
 80      80       80      ° │    │
        °  °       .       80│ 80│
   °                  °  │ ·     │ °
   °                    °│       │
   °   °  ·     °  °  │ ° °    °  │ °
   °              °          °
                     °      °
   °              °
 80 ° 50              160        80
```

This plat represents territory about two (2) miles square. The lands marked "C. C. Harris," are the lands in controversy. The several dots represent oil wells. In a space of two miles square, the central section of which is given in the plat, are 147 oil wells, of which twelve are on defendant's lands, and the remainder on adjacent lands.

The lease which is in evidence has no provision as to the number of the wells that shall be drilled by the lessee. Testimony, however, has been offered, tending to show that oil and gas are mineral substances of fleeting and transitory nature. The authorities read also show that courts have judicially pronounced that such substances are of a transitory nature. Testimony is further offered that when wells are drilled and operated on any tract of land, such wells will draw and drain oil from under adjoining lands. For this reason, a custom has grown up among oil operators for each operator te place along the outer line of the lands he may be operating, a row of wells called in "oil parlance," "protecting" wells, I suppose because they protect the land on which they are drilled from the row of wells that have been placed along the outer line of the adjoining lands. This will bs more thoroughly understood by a glance at the plat above. As to the allegations in the petition, Mr. Harris, in his evidence, admits that if not prevented by the injunction of this court, he will enter upon these lands in controversy, or such part of the same as are not occupied by the plaintiff with its oil wells, and that he will proceed to drill other wells on that part of said lands where there are now no wells.

As to the allegations in the answer, the defendant claims:

1. That the twelve wells on his land operated by the plaintiff are not sufficient to fully develop and produce all the oil underlying his said lands, and,

2. That the wells on the lands adjacent to him drain and draw off the oil under his said lands.

The defendant offers testimony tending to prove the above claims, and the plaintiff offers testimony tending to disprove the said claims of defendant. Plaintiff further offers testimony tending to show that these wells it has put down and now operates on defendant's lands, fairly and fully comply with the terms of the lease, and fully protect defendant from wells on adjoining lands.

As stated above, the lease is silent as to the number of wells lessee shall put down.

Counsel for plaintiff claim, first, that under the terms of the lease, it, the plaintiff, is *not* required to drill any specified number of wells. Second, that defendant's remedy, if he has one, is in damages. Third, that plaintiff has fully and fairly developed the lands of defendant, and protected said lands from wells on adjoining lands.

Nearly, if not quite all, the decisions made by the courts of last resort, upon questions of this character, are from the Supreme Court of Pennsylvania. Those decisions, together with a few made by the circuit courts of this state, have been fully presented by counsel in argument, and will be found in their respective briefs.

A careful reading of these decisions convinces me that the claim made by plaintiff's counsel that where an oil lease is silent as to the number of wells to be put down, that therefore the lessor is without remedy, is not tenable. The lessor is *not* without remedy. The lessor must fairly and reasonably develop the territory leased, and also protect the same from wells on adjoining lands, and in case the lessee fails so to do, a court of equity *will* take jurisdiction, and to the extent of the lands on which there are no wells, will declare the lease forfeited and permit the lessor to enter and drill thereon. As to the claim of plaintiff's counsel that defendant's remedy is in damages, I do not see how the remedy can be ascertained. They are remote and speculative. We all know that an oil well, like the oil, is fleeting and transitory. One well may produce a thousand barrels of oil daily, and another may be what is called in oil parlance "a dry hole." Expert oil men have frequently testified in cases tried before me that in what is known as good oil territory there is no way of ascertaining or knowing what may be the character or output of wells that may be put down before they are put down, so that it seems to me the defendant has no remedy in damages.

The question then comes up as to whether in the lease of this land the plaintiff has fairly and reasonably operated the land and taken care of the oil. The land appears to be in the heart of the oil country. The fact that there are one hundred and forty-seven wells in the immediate vicinity of it will indicate that it is valuable oil territory. It is claimed that on the west side of defendant's land there are four wells, and that directly across the road there are also four wells. This is true. But the four wells opposite do not take any more oil from defendant's land than his takes from the adjoining lands. Defendant offers testimony tending to show that the four wells immediately west of him will draw oil from territory twelve hundred feet back of the wells on his land. But it appears from the plat that on the adjoining land back of these four wells there are no wells. So that the one series of wells draw as much oil from all directions as do the other series, and there is a compensation. Oil men all admit this. Defendant's wells reach territory that does not belong to him. As much territory across the road is drained by his wells as there is of his territory drained by the wells upon the road. Upon the north there is but one well, and no well on defendant's land opposite thereto, but the testimony shows that there is a

house and orchard there on defendant's side.   Under the terms of the lease plaintiff could not drill near the house, or in the orchard.   It offered, as appears from the evidence, to drill a well there if the defendant would give permission.   This he refused.   So that he cannot complain if he has no protection there.   Plaintiff did put down a well as near as it, could, which shows that their action was fair in the matter.

Upon the east eighty acres there was a well on the north side, but plaintiff put one right opposite to it on defendant's land.   So as to that he is protected.   Along the east line of defendant, and on his neighbor's lands there are five wells, but back of it there are none.   But opposite the five wells plaintiff has drilled six wells on defendant's lands, so that here the plaintiff is protected.   His six wells will draw as much oil from his neighbor's land as his neighbor's five wells draw from his land.

Upon the south line defendant has protection.   He has two wells upon his land, and there is only one opposite on his neighbor's land at the southeast corner.   On his west eighty acres there is a well on the adjoining land, but as to it he has been protected by a well on his land.   So that upon all the lines of defendant's land, north, east, south and west, wherever there have been wells on the adjoining lands, the plaintiff has protected the defendant by drilling a well upon his land.

It appears from the plat and the custom of the oil country, that no wells are drilled in the center of a tract of land, but a row of wells is strung along the outer line.

I am satisfied from the evidence that the defendant has sufficient protection, and his lands are being fully and properly developed and operated. The prayer of the answer and cross-petition will be refused ; the prayer of the petition will be granted, and the injunction made perpetual.

*M. F. Elliott, Troup & Dunn,* for plaintiff.

*Blackford & Blackford,* for defendant.